IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

| | |
|---|---|
| RONALD HURD,<br><br>    Plaintiff,<br><br>v.<br><br>NOVARTIS PHARMACEUTICALS CORPORATION,<br><br>    Defendant. | No. 2:20-cv-00262-JAP-GBW |

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S MOTION FOR A PROTECTIVE ORDER AGAINST DEFENDANT NOVARTIS PHARMACEUTICALS CORPORATION'S NOTICE OF DEPOSITION OF DR. AMANDA RYAN AND NOTICE OF NON-APPEARANCE**

Plaintiff Ronald Hurd ("Plaintiff") respectfully moves this Court for a protective order under Fed. R. Civ. P. 26(c) against Defendant Novartis Pharmaceuticals Corporation's ("NPC") Notice of Deposition of Plaintiff's treating cardiologist, Dr. Amanda Ryan (the "Notice"). Sufficient grounds exist to grant a protective order in this case as (1) Plaintiff will be substantially prejudiced if this deposition proceeds at this time due to NPC's failure to provide discovery Plaintiff has demanded, and is clearly entitled to and (2) given the pending motion to transfer currently in front of the Judicial Panel on Multidistrict Litigation ("JPML"), to be heard on July 29, 2021, discovery in this case should be briefly stayed until the JPML issues its soon expected decision.

## BACKGROUND

This case is one of a series of nearly two-hundred (200) pending products liability cases filed against NPC related to its drug Tasigna—a tyrosine kinase inhibitor approved for the

treatment of chronic myelogenous leukemia. In all of these cases, plaintiffs allege that Tasigna caused accelerated and severe atherosclerosis (narrowing of the arteries) that has caused them severe vascular injuries, including peripheral vascular disease, coronary artery disease, and cerebral vascular disease.  Silverman Decl., at ¶ 4.  There are currently 19 cases pending in 12 different federal districts and over 160 cases pending in the New Jersey Multicounty Litigation ("MCL").  *Id.*

Plaintiff, Ronald Hurd, took Tasigna from January 2013 to December 2017. As a result of his use of Tasigna, Plaintiff suffered atherosclerotic related injuries including peripheral vascular disease and arteriosclerosis requiring a coronary artery bypass graft and angioplasty procedures. NPC now seeks to depose Plaintiff's treating cardiologist, Dr. Amanda Ryan, and has unilaterally Noticed her deposition, despite having failed to produce relevant and necessary discovery and in advance of an impending decision from the JPML on consolidation. Given these circumstances, and the extensive history of delay and obstruction employed by NPC detailed below, a protective order staying Dr. Ryan's deposition is warranted here.

On April 14, 2021, a motion to transfer was filed under 28 U.S.C. § 1407 with the JPML, seeking to transfer this case, as well as the other 18 federal cases, to the Southern District of Illinois for the purposes of pretrial coordination and consolidation. *Id.* at ¶ 5. On May 6, 2021, Plaintiff filed an interested party response in support of the motion to transfer actions for coordinated pretrial proceedings. *Id*. Briefing on this motion is complete and a hearing date has been set for July 29, 2021. *Id*. Based on well-established prior precedent, Plaintiff anticipates a ruling from the JPML will issue in early August, approximately thirty (30) days from today.  *Id.*

On May 28, 2021, the New Jersey Supreme Court published its order transferring and consolidating all cases to Bergen County before Superior Court Judge Rachelle Harz. *Id.* at ¶ 6. Judge Harz has significant experience in managing complex litigation such as this case having presided over numerous pharmaceutical and medical device MCLs. *Id*. The first formal case management conference in the MCL is scheduled for July 8, 2021. *Id*. One of the first items that will be addressed by the MCL court is outstanding discovery from NPC. *Id*.

The lack of complete and adequate discovery responses from NPC, or even any real progression towards that goal, was a major consideration in Plaintiffs' decision to move the New Jersey Supreme Court for an MCL and to seek transfer coordination of the federal cases from the JPML. *Id.* at ¶ 7. Indeed, since the time Plaintiffs' counsel began filing cases, including this case, well over a year ago, NPC has insisted on coordinating their discovery in a global manner. *Id.* Despite this insistence, NPC has nevertheless consistently resisted, stalled, objected on spurious grounds, negotiated in bad faith, made unilateral productions over Plaintiffs' objections, and even outright objected to producing a witness in response to a foundational 30(b)(6) deposition notice served by Plaintiffs to assist in identifying relevant custodians from whom documents would be produced. See *Id. at* ¶ 7 and Ex. A. NPC's objection to this notice resulted in full briefing to a federal magistrate in another federal case before NPC ultimately conceded, on the eve of hearing, that the deposition should go forward. *Id.* As a result, a deposition that should have been nothing more than a mere prerequisite to document production, originally noticed for October 2020, did not go forward until March 2021. *Id.*

The parties are currently at an impasse regarding the custodians and search terms that should govern general document production, as well as the non-custodial sources from which

productions should be made by NPC. *Id*. at ¶ 8. Initial letter briefs have been submitted to Judge Harz, who has indicated this will likely be one of the first issues she will address. *Id*. However, rather than engage in an effort to resolve these issues, NPC is now attempting to advance the argument that discovery from NPC should be held in abeyance so that it can file dispositive motions on the pleadings, more than fifteen months after the first case was filed.[1] *Id*.

In addition to the lack of a fulsome document production in the general case, to date, NPC has provided next to nothing in response to Plaintiff's case specific Requests for Production ("RFPs") and Interrogatories, which were served on September 10, 2020 and responded to on October 13, 2020.[2] *Id*. at ¶ 9, Ex. C, and Ex. D. As of May 2021, negotiations regarding the adequacy of these responses have stalled, and these issues will similarly be raised with the MCL court (as well as MDL court should the pending petition be granted). *Id*. at ¶ 9.

Since reaching an impasse on these important issues, Plaintiff has awaited the results of the MCL and MDL petitions, in an effort to avoid briefing the same issues in multiple courts as doing so would be both a waste of resources, and have the potential to result in inconsistent rulings. *Id*. at ¶ 10. On June 3, 2021, less than a week after the MCL was granted, counsel for Plaintiff, along with counsel for plaintiffs in the other federally filed Tasigna cases, reached out to counsel for NPC to discuss the proposition of jointly moving for a brief stay in the federal Tasigna cases, given the recent formation of the MCL in New Jersey and the pending decision from the JPML. *Id*. at ¶ 10 and Ex. D. Counsel for NPC flatly refused to join the motion and accordingly, were

---

[1] NPC has already filed such a motion in one of the federal cases - *Colella v. Novartis Pharmaceuticals Corporation*, 3:20-cv-00367 (D. Conn.) at Doc. 66.

[2] These RFPs and Interrogatories also form the basis for the general discovery sought in this case, which as discussed above NPC has indicated it would prefer to address in a global manner. As is the case with the case specific responses NPC's responses to the general RFPs and Interrogatories also remain grossly deficient.

advised that plaintiffs' counsel would proceed with filing the motions to stay in all pending federal cases. *Id.*

On June 22, 2021, despite being notified of Plaintiff's intention to file a Motion to Stay discovery in this case, and being advised on numerous occasions that Plaintiff objects to depositions of Plaintiff's treating physicians proceeding at this time due to NPC's failure to provide full and complete discovery responses, NPC unilaterally served a Notice of Deposition ("Notice"), seeking to depose one of Plaintiff's treating cardiologist, Dr. Amanda Ryan, on July 14, 2021. *Id*. at ¶ 11 and Ex. E. This deposition was noticed by NPC prior to any discussion with Plaintiff's counsel, including whether or not Plaintiff's counsel was even available on this date.[3]

Plaintiff's counsel responded a day later on June 23, 2021 objecting to the deposition and explaining that if NPC insisted on moving forward, Plaintiff would be forced to seek a protective order from the court. *Id*. at ¶ 12 and Ex. F.  Having received no response from NPC, Plaintiff's counsel followed up on July 6, 2021 advising of our imminent intention to move for a protective order and seeking a response from NPC as to whether it was willing to withdraw the Notice. *Id*. Plaintiff's counsel further advised that we are not available on the noticed deposition date. NPC responded same day refusing to withdraw the Notice and insisting the deposition move forward on the noticed date. *Id*.

Plaintiff's Motion to Stay was filed shortly thereafter NPC served the Notice of Deposition to Dr. Ryan on the same day, June 22, 2021. [Doc. 41 *subsequently refiled as* Docs. 42 and 43]. *Id*. at ¶ 13. Similar motions to stay were filed in all other pending federal cases. *Id.* Stays have

---

[3] On June 14, 2021 NPC similarly unilaterally served a Notice of Deposition, seeking to depose Plaintiff, Ronald Hurd, on July 19, 2021.

already been granted in two cases, where, as here, NPC was seeking to move forward with case specific depositions.

Counsel for Plaintiff has maintained the position throughout this litigation, and notified counsel for NPC on numerous occasions, that depositions of treating physicians cannot occur until Plaintiff receives a complete and adequate discovery responses from NPC, because a significant portion of the outstanding discovery bears on Novartis's communications and relationships with Plaintiff's physicians. *Id*. at ¶ 14. Importantly, while NPC's entire document production remains insufficient, to date, NPC has not identified a single item of discovery in response to Plaintiff's case specific RFPs. *Id*. at ¶ 14 and Ex. B. NPC has similarly been grossly deficient in responding to Plaintiff's case specific Interrogatories. *Id*. at ¶ 14 and Ex. C. As a result, a protective order staying Dr. Ryan's deposition is warranted here.

Plaintiff is hopeful that the outstanding discovery issues can be addressed by the MCL court in short order, and this deposition should not proceed until such time. *Id*. at ¶ 15. Further, given the pending motion to transfer and JPML hearing, just three weeks away on July 29, 2021, this deposition should not go forward at this time. *Id*. When this and the other 18 pending cases are consolidated and transferred, the transferee district should determine how best to proceed with case specific discovery. *Id*.

## ARGUMENT

### I. LEGAL STANDARD

Under Federal Rule of Civil Procedure 26(c)(1), "[t]he court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense, including . . . specifying terms, including time . . . for the disclosure or discovery." In

addition, "[t]he trial court has great discretion in establishing the time and place of a deposition." *O'Sullivan v. Rivera*, 229 F.R.D. 187, 189 (D.N.M. 2004) *citing In re Standard Metals Corp.,* 817 F.2d 625, 628 (10th Cir. 1987); *see also Seattle Times Co. v. Rhinehart*, 467 U.S. 20, 36 (1984) (explaining that Rule 26(c) "confers broad discretion on the trial court to decide when a protective order is appropriate and what degree of protection is required"). The Court has broad discretion to stay proceedings incident to its power to manage its docket and may issue a stay pursuant to Federal Rule of Civil Procedure 26(c). *See Hartford Casualty Insurance Co. v. Trinity Universal Insurance Co. of Kansas*, 2015 WL 12911729, at *3 (D.N.M 2015). In deciding whether to stay discovery, the court should balance any undue burden that discovery would impose against any prejudice a stay of discovery would cause. *Id. citing GTE Wireless, Inc. v. Qualcomm, Inc.*, 192 F.R.D. 284, 289 (S.D. Cal. 2000)

## II.  NPC's NOTICE IS PREMATURE AS SIGNIFICANT DISCOVERY REMAINS OUTSTANDING

As discussed above, NPC's discovery responses in this litigation remain substantially incomplete. In fact, over a year since this case was filed, the progress of both general and case-specific discovery has remained largely stagnant, due to NPC's continued efforts to delay. NPC's document production thus far consists almost exclusively of documents produced in two previously litigated cases[4] (the "Prior Matters"), of which neither Plaintiff, nor Plaintiff's counsel were involved, as well as a few unilateral productions made over Plaintiffs' objections. Further, as

---

[4] The cases were pending in federal courts in California and Florida, styled *Lauris v. Novartis Pharmaceuticals Corp.,* 1:16-cv-00393 (E.D. Cal.) and *McWilliams v. Novartis Pharmaceuticals, Inc.,* 2:17-cv-14302 (S.D. Fla.). Discovery in these cases was separate from the cases currently pending in federal court, as well as the MCL.

detailed above, to date, NPC has provided grossly deficient responses to Plaintiff's RFPs and Interrogatories, including a failure to identify a single case-specific document in this case.

While it is likely that in response NPC will inevitably argue that the approximately 500,000 documents produced in the Prior Matters should be sufficient for Plaintiff here, the experience of Plaintiff's counsel in complex litigation such as this suggests that for a drug of Tasigna's lifespan and revenue,[5] *millions* of discoverable documents will be involved. The relatively modest amount of documents, and particularly custodial documents, contained in NPC's productions in those matters were due in large part to significant limitations in time and scope. Plaintiff here has, from the start, consistently expressed to NPC that the prior discovery conducted in those cases was not sufficient due to the truncated time period addressed, the inadequate search terms applied, as well as the limited number of custodians from which documents were produced. Furthermore, any discovery disputes which were decided in those cases are not instructive here, as Plaintiff's counsel was not party to the negotiations surrounding that document production.[6]

In addition, and perhaps more importantly, NPC has not identified a single document in response to Plaintiff's case specific Requests for Production ("RFPs") and has similarly failed to adequately respond to Plaintiff's case specific Interrogatories, that directly deal with NPC's contact with Plaintiff's physicians. *See* Ex. B at Requests 87 -90 and Ex. C at Interrogatories 9 and 17 -25. These RFPs and Interrogatories seek information highly relevant to the claims and

---

[5] Preclinical trials on Tasigna began in 1999. Novartis reports revenues for Tasigna in the year 2020, alone, in excess of $1.9 billion. *See* https://www.novartis.com/sites/www.novartis.com/files/novartis-20-f-2020.pdf.

[6] The parties have reached an impasse with regard to NPC's document production in this litigation. Initial letter briefs have already been filed in the MCL and are currently in front of Judge Harz. Further, if the pending Motions to Stay filed in the various federal courts are not granted, it is likely the federal plaintiffs, including Mr. Hurd, will be forced to file Motions to Compel as well.

defenses[7] at hand, including evidence that bears on general and specific causation which, based upon Dr. Ryan's specialty, is likely to be a significant portion of her testimony. In addition, they directly implicate Plaintiff's treating physicians, including Dr. Ryan.[8] Plaintiff is entitled to fulsome document production with regard to both general and case specific discovery prior to moving forward with the depositions of his treating physicians. Plaintiff would be greatly prejudiced if he was not able to adequately prepare for the deposition by obtaining and reviewing relevant documents, some of which would likely ultimately be used to question the witness.

Indeed, courts have routinely recognized the importance of obtaining relevant documents with sufficient time to review them in advance of a deposition and have ordered timely production of same. *See, e.g.*, *In re: Santa Fe Natural Tobacco Co. Marketing and Sales Practices and Products Liability Litigation*, 2018 WL 3972909, at *12 (D.N.M. 2018) (enforcing a prior agreement between the parties to produce documents seventy-two (72) hours before depositions in part, to eliminate any potential need to reopen the deposition, and also noting that the request would be appropriate even if it was not agreed to); *Dragushansky v. Nasser*, 2016 WL 452155, at *1 (S.D.N.Y. Feb. 4, 2016) (noting that judge had previously ordered "plaintiff to produce any and all document requests to Defense counsel in advance of the date of Plaintiffs deposition to afford counsel sufficient time to review those documents"); *Kansas Food Packers v. Corpak*, 2000 WL 33170870, at *4 (D. Kan. Oct. 12, 2000) (ordering defendant to produce documents "forthwith so that [plaintiff] may review the documents in advance of depositions); *Hartzell Mfg., Inc. v.*

---

[7] NPC has asserted forty-one affirmative defenses in this case. [Doc. 25]

[8] For example, Plaintiff has requested documents and information related to marketing materials, communications, sales calls, prescribing and treating practices, clinical trial involvement, consulting relationships, attendance at promotional events, and renumeration, among other things, as they relate to Plaintiff's treating physicians.

*American Chemical Tech.*, 899 F. Supp. 405, 410 (D. Minn. 1995) (ordering that parties must receive copies of relevant witness documents "at least one week before the [] deposition"). In addition, courts also have permitted a party to recall witnesses whose documents were not produced in a timely manner. *See, e.g., Apple Inc. v. Samsung Elecs. Co.*, 2012 WL 762240, at *3 (N.D. Cal. Mar. 8, 2012) (granting additional deposition time "in light of [] repeated, late productions").

Here, Plaintiff would be substantially prejudiced should Plaintiff receive NPC's discovery responses after Dr. Ryan's deposition is complete. This is particularly so where NPC is in possession of important information and would gain an unfair advantage should the documents be withheld. This, in effect, would reward NPC for its refusal to provide relevant discovery and cooperate in making a production uniform across all cases, as NPC themselves have insisted. Such actions have done nothing more than create the very scenarios that led Plaintiff to move for consolidation, effectively forcing NPC to engage in the type of conduct that would assist in bringing this complex litigation to a conclusion. Furthermore, it is likely Plaintiffs would need to request an opportunity to re-depose the witness after it finally receives the discovery to which he is entitled. Such a result would constitute both annoyance and undue burden, as this could easily be avoided by simply waiting until after document is complete to take the deposition. This is particularly true, where, as here, there is no prejudice to the Defendant in waiting.

### III. DISCOVERY IN THIS CASE SHOULD BE STAYED UNTIL THE JPML ISSUES A DECISION ON THE PENDING MOTION TO TRANSFER

As this Court is aware, Plaintiff filed a motion to stay discovery until a decision from the JPML on the pending motion to transfer is issued. [Doc. 41 *subsequently refiled as* Docs. 42 and 43]. Plaintiff will not repeat the arguments already advanced in his prior motion here, but asserts

that a protective order with respect to Dr. Ryan's deposition is warranted based on the same factors advanced in support of his motion to stay. It is worth noting, however, that the motion practice Plaintiff has been forced to engage in here is the precise type of motion practice predicted in his motion to stay.

Further, even if the motion to stay is denied here, a protective order is still warranted given the pending transfer motion. Indeed, in consolidated or coordinated proceedings, such as an MDL, parties typically institute a discovery plan that includes discovery pools of a subset of Plaintiffs, as well as bellwether trial selection processes. Processes like this are instituted to ensure representative cases are selected for discovery, such that the entire litigation benefits. *See* Manual for Complex Litigation, Fourth, § 22.315 Test Cases ("If individual trials, sometimes referred to as bellwether trials or test cases, are to produce reliable information about other mass tort cases, the specific plaintiffs and their claims should be representative of the range of cases."). NPC should not be permitted to unilaterally push forward with case specific discovery in an effort to circumvent this system. There is no prejudice to NPC here, if the JPML grants the petition, case specific discovery can move forward in the manner determined by the transferee court. If it is not, it can resume at an appropriate time under the guidance of this court.

## CONCLUSION

For these reasons, Plaintiff respectfully requests that the Court issue a protective order staying the deposition of Dr. Ryan until NPC has completed its document production and the JPML reaches its decision on the pending motion to transfer.

Dated: July 7, 2021						Respectfully Submitted,


**PARKER WAICHMAN LLP**

/s/ *Raymond C. Silverman*
Raymond C. Silverman
6 Harbor Park Dr.
Port Washington, NY 11050
Telephone: (516) 466-6500
Facsimile: (516) 466-6665
rsilverman@yourlawyer.com


Justin R. Kaufman
Rosalind B. Bienvenu
Caren I. Friedman
**DURHAM, PITTARD & SPALDING, L.L.P.**
505 Cerrillos Road, Suite A209
Santa Fe, NM 87501
Telephone: (505) 986-0600
Facsimile: (505) 986-0632
jkaufman@dpslawgroup.com
rbienvenu@dpslawgroup.com
cfriedman@dpslawgroup.com

*Attorneys for Plaintiff*

## CERTIFICATE OF SERVICE

I certify that on July 7, 2021 a copy of the foregoing was served on all counsel of record via the Court's CM/ECF system.

*/s/ Raymond C. Silverman*
Raymond C. Silverman
